ROOT REFINING COMPANY *v.* BROOKS.

4-4088

Opinion delivered January 13, 1936.

*Mahony & Yocum,* for appellant.

*Marsh & Marsh* and *W. E. Patterson* and *W. H. Rector,* for appellee.

SMITH, J.   D. S. Brooks was on September 15, 1925, the president of Root Refineries, Inc., a Louisiana corporation, having its principal office at Shreveport in that

State. Brooks maintained an office at El Dorado in this State where the company's refinery was located. On the date mentioned, Brooks purchased an oil and gas lease from Harry Ezzell, covering a forty-acre tract of land in Union County. The consideration for the lease was the sum of $40,000 of which $20,000 was to be paid in money the balance in oil, "if as and when produced." Of the money payment, $5,000 was in cash paid by a draft on the corporation. The balance of the money payment was evidenced by three notes for $5,000 each, due respectively thirty, sixty and ninety days after date, and all bearing interest at the rate of 7 per cent. per annum from date until paid. The testimony is somewhat confusing as to whether the original lease was to Brooks individually or to him as trustee. Ezzell testified that the lease was made to Brooks as trustee, but that he understood that the lease had been bought for the corporation of which Brooks was president. He testified, however, that he required Brooks to sign the notes individually and not as trustee, and this was done.

The general office at Shreveport was in charge of D. P. Hamilton, who was the vice-president of the corporation. It is certain that Hamilton was displeased with the purchase, and that Brooks was so advised. The first note due October 15, 1925, was not paid until November 7, 1925, and the draft drawn in its payment made no reference to the interest which had accrued thereon. Brooks does not, however, appear to have taken up the note when he drew the draft covering it.

Brooks testified that, when he saw Hamilton's displeasure, he told Hamilton to charge the purchase price to his (Brooks') account, but Hamilton declined to do so and told Brooks to forget it. The remaining two notes were not paid. It appears that Ezzell was satisfied with Brooks' individual liability as the maker of the notes, although Ezzell testified that he considered the corporation secondarily liable, as the lease had been purchased for its account by its president. Ezzell does not appear to have addressed any demand for payment to the corporation itself at its home office in Shreveport, although he

frequently discussed the matter with Brooks personally at El Dorado.

The lease required that a well be drilled within ninety days from September 15, 1925. The lease was not transmitted to the corporation, nor was it placed of record, nor was it assigned by Brooks to the corporation. No well was drilled. Thus the matter rested for nearly two years and until September 15, 1927, at which time Ezzell executed and delivered to Brooks as trustee, a second lease which eliminated the drilling requirement. This lease was not assigned or placed of record, and the Shreveport office appears to have had no information about it until March 29, 1928, at which time the following letter was received from Brooks:

"El Dorado, Arkansas, March 29, 1928.

"Root Refineries, Inc.,
"Commercial National Bank Building,
"Shreveport, La.

"Gentlemen:

"On September 15, 1925, I purchased under the name of D. S. Brooks, trustee, 40 acres from Harry Ezzell, Jr., situated in the NE¼ of the NW¼ of section 18, township 17 south, range 17 west, Union County, Arkansas, for the consideration of $20,000 cash and notes, and $20,000 out of oil, as set forth in oil and gas lease attached.

"Our records show that we have paid $10,000. Mr. Ezzell still holds two notes for $5,000 each, which I have agreed to pay at the rate of $400 monthly, commencing this month and continuing over the ensuing 24 months. Hereafter send remittances to Harry Ezzell, Jr., 511 Exchange Bldg., between the 20th and 25th of each month.

"The lease attached is the same as the original dated September 15, 1925, except that it runs to September, 1931, instead of 1930.

"If a well is not started on this lease by September 15, 1928, see that the $40 a year rental is taken care of,

as set forth in last paragraph, first page of said oil and gas lease.

"Yours truly, Dan Brooks,
"President."

Thereafter the corporation made regular monthly remittances of $400 each to Ezzell. Checks covering these payments were accompanied by vouchers stating the account upon which the payment was made. The 25th remittance was made under date of May 24, 1930, and contained this indorsement: "This check is given in payment of final payment on account of purchase of lease covering NE¼ of the NW¼, section 18, township 17 south, range 17 west, Union County, Arkansas."

Ezzell testified that he received this check on May 26 and held it until June 3 before writing the corporation demanding the payment of interest. Before depositing the check for collection, he made the following notation on its back: "Payment on account but not final payment." The check was duly paid. No well was ever drilled on the lease in question, but the drilling of dry wells on adjacent lands demonstrated that the land was without value so far as the production of oil and gas is concerned.

At the time the last $400 payment was made, the corporation had been reorganized, and Hamilton had succeeded Brooks as president.

Ezzell sued Brooks individually on the original purchase money notes after allowing credit for the money he had received. Judgment was recovered by default without making the corporation a party defendant. Brooks did not pay this judgment and it is alleged that he is now insolvent.

On December 5, 1933, Brooks filed suit against the corporation in which he alleged that as the president of and as agent for the corporation he had purchased the lease, giving his individual notes for the benefit of the corporation. He alleged that a judgment had been recovered by Ezzell against him in the sum of $3,135.28, as the balance on said notes remaining unpaid by the said Root Refining Company, and he prayed judgment

against that company. "* * * in extinguishment and in satisfaction of said judgment against him so obtained by Harry Ezzell * * *." An intervention was filed in this cause by Ezzell who prayed that he have, "* * * independent judgment jointly and severally against the plaintiff, D. S. Brooks, and against the defendant, Root Refining Company for the balance due upon the aforesaid notes."

The relief prayed was granted, and a judgment and decree was rendered in Ezzell's favor against both Brooks and the corporation from which is this appeal.

For the affirmance of this decree, it is insisted that there was no dispute or controversy as to the liability of the corporation, nor as to the amount thereof, and that Ezzell had the right therefore to consider the $400 payments as mere payments on account and to ignore the recital of the 25th check that it was tendered as payment in full.

The law applicable to the fact herein recited has been frequently declared, one of the most recent cases on the subject being that of *Massachusetts Mutual Life Insurance Company* v. *Peoples Loan & Investment Co.*, 191 Ark. 982, 88 S. W. (2d) 831, which cited our leading cases. It was there said: "When a claim is disputed or unliquidated, and the tender of a check or draft in settlement thereof is of such character as to give the creditor notice that it must be accepted in full satisfaction of the claim or not at all, the retention and use thereof by the creditor constitutes an accord and satisfaction" (Citing cases).

It was there also said that it was not necessary that the dispute or controversy should be well founded, but that it was necessary that it should exist in good faith.

Appellee insists that, there never having been any controversy about the amount due Ezzell, he was justified in assuming that the accounting department of the corporation had placed the notation of the final payment on the check by mistake, and that he had accepted the check believing that those words had been placed on

it by mistake, and that he so advised the corporation in ample time for it to protect itself.

We do not concur in this view. Ezzell was fully warranted in assuming that Brooks did not question his personal liability, and he testified that he looked to Brooks primarily for his money, but he considered the corporation secondarily liable. He must have known of the friction between Brooks and the accounting department of the corporation. The failure for a period of two years to make any payment or settlement would alone apprise him of that fact. The letter of March 29, 1928, set out above, lacks but little if anything of being a novation. A new lease was executed and new terms of payment provided. If this writing expressed the new agreement as it purported to do, it is apparent that an additional payment of only $10,000 was provided for, and this was to be distributed over a period of 25 months. Evidently no account was taken of the interest and no provision was made for its payment. It is certain that 25 payments of $400 each would not pay both principal and the accrued and current interest, and yet only 25 payments of $400 each were provided for. It appears that each payment referred to the new indebtedness and it is certain that the 25th payment professed to be in full discharge of the balance remaining due. Ezzell knew that it was so intended, for he wrote upon the check that it would not be so accepted. He had no right to assume that a mere mistake in accounting had been made as a copy of the letter of March 29, *supra*, had been furnished him. There was no mistake. Ezzell had the option of accepting the check as tendered or of returning it. He did not return nor has he tendered the return of the proceeds of the check or of any of the other 25 payments. He made his election and is bound by it.

The decree will therefore be reversed, and, as the cause has been fully developed, it will be dismissed.