Janet A. JAHN, Appellant (Plaintiff below),

v.

Michael BURNS, Appellee (Defendant below).

No. 5028.

Supreme Court of Wyoming.

April 23, 1979.

William J. Flynn, of Law Offices of Richard D. Gist, Lander, for appellant.

Donald H. Hall of Vidakovich, Pappas & Hooper, P. C., Lander, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellant-plaintiff and appellee-defendant were involved in an automobile accident. Defendant mailed plaintiff a letter accompanied by a cashier's check for $200.00. The letter read in part: "I intend this check as payment in full for all personal and property damages resulting from our accident of Feb. 10, 1978." The front of the check contained the notation: "Payment in full for all personal and property damages resulting from our accident of Feb. 10, 1978." Plaintiff crossed out this notation and wrote on the back of the check: "Deposited under protest and with full reservation of all my rights." She then endorsed the check and cashed it. Thereafter, she filed a complaint against defendant for damages arising out of the accident. Defendant answered the complaint asserting, among others, a defense of accord and satisfaction. Defendant then filed a motion for summary judgment. The parties stipulated that the motion did not raise a genuine issue as to any material fact.

The district court granted the motion for summary judgment, holding as a matter of law that plaintiff's acceptance of the check amounted to an accord and satisfaction. We will affirm.

Where a claim is unliquidated and in dispute, a party's acceptance of a check in an amount less than that claimed and expressed to be in full payment constitutes an accord and satisfaction notwithstanding any restriction, reservation or protest placed upon the check by the payee. *Thayer v. Smith*, Wyo., 357 P.2d 1115 (1960); and *Oedekoven v. Oedekoven*, Wyo., 538 P.2d 1292 (1975). This is the law in most jurisdictions. See 1 Am.Jur.2d Accord and Satisfaction § 21, p. 320; 1 C.J.S. Accord and Satisfaction § 32, p. 512; Annotations 34 A.L.R. 1035, 75 A.L.R. 905; and Restatement of the Law, Contracts, § 76, p. 83 (A.L.I. 1932).

Plaintiff recognizes this proposition but contends it was changed in 1961 by enactment of §§ 34–21–101 through 34–21–966, W.S. 1977 (the Uniform Commercial Code). This is the only issue in this case. Plaintiff presents two arguments: (I.) § 34–21–126, W.S.1977, is general enough to control this matter, and (II.) §§ 34–21–301 through 34–21–379, W.S.1977 (Article 3 of the U.C.C.) concerning commercial paper, brings this matter within the purview of the Code inasmuch as a check was used.

I.

Section 34–21–126 reads:

"A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party

does not thereby prejudice the rights reserved. Such words as 'without prejudice,' 'under protest' or the like are sufficient."

The section is not applicable to the facts of this case by virtue of its express terms. The portion pertinent to this case reads: "[a] party who with explicit reservation of rights * * * assents to performance *in a manner* * * * *offered* by the other party does not thereby prejudice the rights reserved." (Emphasis supplied.) The manner offered here is part payment *conditioned on it being in full settlement.* In an attempt to reserve rights, plaintiff did not "assent to performance *in the manner offered.*"

The words of the statute are plain. Construction or interpretation—liberal or strict—is unnecessary. In construing a statute, its words must be given their plain and ordinary meaning. *Mountain Fuel Supply Co. v. Emerson*, Wyo., 578 P.2d 1351 (1978); *Geraud v. Schrader*, Wyo., 531 P.2d 872, cert. den. sub nom. *Wind River Indian Education Association, Inc. v. Ward*, 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975); *Johnson v. Safeway Stores, Inc.*, Wyo., 568 P.2d 908 (1977). And it was on this basis that the trial court made its determination, stating it well in the summary judgment:

" * * * This is not a situation in which plaintiff assented to a performance in any manner demanded or offered by the defendant, * * *."

The statutory provision was not intended to apply to a situation as exists in this case. Official Comment to this section of the Uniform Commercial Code reads:

"1. This section provides machinery for the continuation of performance along the lines *contemplated by the contract* despite a pending dispute, by adopting the mercantile device of going ahead with delivery, acceptance, or payment 'without prejudice,' 'under protest,' 'under reserve,' 'with reservation of all our rights,' and the like. All of these phrases completely reserve all rights within the meaning of this section. The section therefore contemplates that limited as well as general reservations and acceptance by a party may be made 'subject to satisfaction of our purchaser,' 'subject to acceptance by our customers,' or the like.

"2. This section does not add any new requirement of language of reservation where not already required by law, but merely provides a specific measure on which a party can rely as he makes or concurs in any interim adjustment in the course of performance. It does not affect or impair the provisions of this Act such as those under which the buyer's remedies for defect survive acceptance without being expressly claimed if notice of the defects is given within a reasonable time. Nor does it disturb the policy of those cases which restrict the effect of a waiver of a defect to reasonable limits under the circumstances, even though no such reservation is expressed.

"The section is not addressed to the creation or loss of remedies in the ordinary course of performance but rather to a method of procedure where one party is claiming as of right something which the other feels to be unwarranted." 1 U.L.A.–U.C.C. § 1–207, pp. 97, 98 (1976). (Emphasis supplied.)

With reference to this Official Comment, it has been said that:

"This language might suggest that the section is not designed to alter the law of accord and satisfaction but to permit parties to go ahead with the performance of a contract without the fear of waiver. An accord and satisfaction, as we have seen, involves a *new* contract, not the 'contemplated' performance of the original contract. Obviously, the section should apply to the situations in which a buyer makes an instalment payment under a contract which he thinks the seller has breached, or the buyer accepts a delivery that he feels does not conform to the contract, or the seller goes ahead with his performance in spite of an anticipatory repudiation by the buyer. In these and similar situations there may be some risk in continuing to perform a contract

which the other party has already breached, and clearly section 1–207 is designed to eliminate or alleviate this risk. Arguably, this is all that section 1–207 is designed to do." William D. Hawkland,[1] "The Effect of U.C.C. § 1–207 on the Doctrine of Accord and Satisfaction by Conditional Check," 74 Comm.L.J. 329, 331 (1969).

The five cases cited by plaintiff[2] in support of her contention do not address themselves to the foregoing. In only one of them was the reservation of rights section of the Uniform Commercial Code (§ 34–21–126 in Wyoming) determinative, and in that case the court noted the establishment by statute in South Dakota of a minority position with reference to accord and satisfaction before the adoption of the Uniform Commercial Code.[3]

## II.

██ Appellant also contends that since a check was used and since §§ 34–21–301 through 34–21–379 relates to commercial paper, this matter is thereby brought within the purview of the provisions of the U.C.C. Plainly stated, the fact that a negotiable instrument was used in a transaction does not make the entire transaction a commercial one. It is true that whenever a negotiable instrument is used, the provisions of §§ 34–21–301 through 34–21–379 are involved. But these provisions pertain to the interpretation, transferability, negotiability, rights of holders, and other aspects of the instrument itself. If the other portions of the transaction are not "commercial," the use of commercial paper does not cause them to fall within the provisions of the Code (§§ 34–21–101 through 34–21–966). Before applying the provisions of the Code, the question must always be asked as to whether or not the transaction falls within the scope of the Code. In this instance: Is the tort claim resulting from the automobile accident a commercial transaction? Obviously, it is not.

The Code is denominated the "Uniform *Commercial* Code," § 34–21–101, W.S.1977. (Emphasis supplied.)

As said in § 34–21–102(b), W.S.1977:

"(b) Underlying purposes and policies of this act are:

"(i) To simplify, clarify and modernize the law governing *commercial* transactions;

"(ii) To permit the continued expansion of *commercial* practices through custom usage and agreement of the parties;

"(iii) To make uniform the law among the various jurisdictions." (Emphasis supplied.)

"Commercial" has been defined as "occupied with commerce." *Bowles v. Co-Operative G. L. F. Farm Products*, D.C.W.D.N.Y., 53 F.Supp. 413, 415. "Commerce" relates to buying, selling, exchanging and transporting of commodities or articles, or the transporting of business, to the exchange or buying and selling of commodities, while "commercial" is defined as pertaining to commerce, mercantile, occupied with commerce, engaged in trade. *Beard v. Board of Education of North Summit School Dist.*, 81 Utah 51, 16 P.2d 900 (1932). See *Galbreath v. Gulf Oil Corporation*, D.C.Ga., 294 F.Supp. 817 (1968).

██ A negotiable instrument, or a commercial paper, involves the business of commerce insofar as the activities delineated in Article 3 of the Code are concerned, i. e., transfer, rights of payor, payee, endorser, holder in due course, etc. However, the use of such in connection with a non-commercial transaction does not *ipso facto* turn that transaction into a commercial transac-

1. William D. Hawkland is Provost and Professor of Law, Faculty of Law and Jurisprudence, State University of New York at Buffalo, and Editorial Consultant to the Commercial Law Journal.

2. *Hanna v. Perkins*, Westchester County Court, N. Y., 2 U.C.C. Rep. 1044 (1965); *Baillie Lumber Co. v. Kincaid Carolina Corp.*, 4 N.C.App. 342,

167 S.E.2d 85 (1969); *Scholl v. Tallman*, S.D., 247 N.W.2d 490 (1976); *Kilander v. Blickle Co.*, 280 Or. 425, 571 P.2d 503 (1977); *Simpson v. Norwesco, Inc.*, U.S.D.C.S.D., 442 F.Supp. 1102 (1977).

3. *Scholl v. Tallman*, fn. 2 supra.

tion which is subject to other provisions of the Code. It does not turn a tort transaction into a commercial transaction.

With reference to the third purpose of the U.C.C., quoted above: "[t]o make uniform the law among the various jurisdictions," we consider our disposition of this matter to be correct whether or not there be other determinations elsewhere on the issues considered. As said by Professors White and Summers [4]:

> "Is a Code case in another jurisdiction entitled to special weight because of the policy of uniformity in commercial law? From time to time a court bows to this policy, but in most cases the court seems more concerned that its decision be right than that it be parallel with another state's. Certainly there are Code decisions that other courts should not follow." (Footnotes omitted.) [5]

The summary judgment is affirmed.

---

4. James J. White is Professor of Law, University of Michigan. Robert S. Summers is Professor of Law, Cornell University.

5. White & Summers, Uniform Commercial Code, § 4, p. 9.