407 So.2d 312 (1981)
Sidney EDER and Adele J. Eder, His Wife, Appellants,
v.
YVETTE B. GERVEY INTERIORS, INC., a New York Corporation, Appellee.
No. 80-1375.
District Court of Appeal of Florida, Fourth District.
December 15, 1981.
Ronald Sales of Law Offices of Ronald Sales, P.A., West Palm Beach, for appellants.
John W. Bellamy, West Palm Beach, for appellee.
PER CURIAM.
This is an appeal from a final judgment awarding the plaintiff corporation in excess of $16,000 for breach of contract.
The Eders retained the services of appellee corporation in the person of Yvette Gervey to furnish and decorate their condominium apartment. According to appellants the maximum expense to them was to be $50,000 based upon cost plus a percentage. Appellee asserts that the figure was merely a cost estimate.
This figure was exceeded in early 1978 and more than $50,000 was paid by the Eders on account. Ms. Gervey testified that at one point Mrs. Eder told her not to worry about compensation because Mr. Eder was an honorable man who paid his bills. The amount owed became a matter of controversy.
At a meeting on March 4, 1978, Ms. Gervey told Mr. Eder that she was over her budget and didn't want to suffer a loss on the job. Mr. Eder testified that the parties then reached a compromise whereby the total sum of $60,000 was to constitute full settlement of the claim. Mr. Eder further testified that in reliance on his belief that the parties had agreed to a compromise he paid $9,700 at the time of the meeting and $4,000 on April 12, 1978. Ms. Gervey admitted that she was aware of Mr. Eder's impression that the figure of $60,000 reflected a full settlement, however she testified that she never actually agreed to accept the compromise sum.
Thereafter, on May 9, 1978 the Eders sent a check to appellee in the amount of $5,000 which bore the legend: "balance in full for all work done." Taking the position that a *313 large sum remained due, appellee endorsed the check "the above is not acceptable as full payment," cashed it and brought this suit for the amount claimed as the unpaid balance on the account, prevailing on that claim in the lower court.
The primary issue thus presented is whether the payee of a check (the creditor) which is tendered in full and final performance of a disputed obligation may, by noting on the check a reservation of rights, cash the check and thereafter successfully rely on that reservation of rights to defeat an express, written condition inscribed on the check by the debtor that acceptance constitutes payment in full. Put another way, the question is whether Section 671.207, Florida Statutes (1979), (section 1-207 of the Uniform Commercial Code), applies to final payment for goods or services. That section provides:
A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice," "under protest" or the like are sufficient.
Neither precedent nor commentary is consistent in the treatment of this issue. Illustrative are Yelen v. Cindy's, Inc., 386 So.2d 1234 (Fla.3d DCA 1980) and Miller v. Jung, 361 So.2d 788 (Fla.2d DCA 1978). In Yelen, the restrictive endorsement: "Received as partial agreement without prejudice, under protest, with full exclusive reservation of rights" was held insufficient to defeat the payor's clear expressed intention that acceptance of the check constituted a compromise and settlement. Section 671.207 Florida Statutes (1979) was not discussed.
In Miller, on the other hand, a landscaper received a check (for less than the amount claimed) marked "Landscaping paid in full" on the front and "cashing of this check constitutes release and waiver of any lien," on the reverse. Adding the words, "Negotiated by named payees under protest and with reservation of all their rights," the landscaper negotiated the check. The trial court denied the landscaper further payment because he had failed to notify the drawer of his reservation of rights prior to negotiating the check. The Second District reversed, holding that there was adequate reservation of rights under Section 671.207 and that to require prior notification would "eviscerate the purpose of the section, ..."
The conflicting policies represented by these disparate results are discussed by White and Summers, Uniform Commercial Code § 13-21 (2d ed. 1980) (Miller view) and 6A Corbin, Contracts § 1279 (2d ed. 1962 & Supp. 1980) (Yelen view).
From the former authority, at page 547:
However, we believe, and virtually all post-Code courts that have been at least tangentially faced with the issue agree, that 1-207 authorizes the payee to indorse under protest and accept the amount of the check without entering an accord and satisfaction or otherwise forsaking his claim to any additional sum allegedly due him.
From the latter authority, at page 293 of the supplement:
It is unfair to the party who writes the check thinking that he will be spending his money only if the whole dispute will be over, to allow the other party, knowing of that reasonable expectation, to weasel around the deal by putting his own markings on the other person's checks. There is no reason why § 1-207 should be interpreted as being an exception to the basic duty of good faith, when it is possible to interpret the two sections consistently. The academic writers who support this result offer no analysis, to the current knowledge of this treatise, which would justify licensing the recipient of the check to so deceive the drawer.
Another source of authority for conflict is the language used in respective Comments on this Code section. Thus, the 1972 official text comments to the Uniform Commercial Code (American Law Institute and National Conference of Commissioners of Uniform State Laws) provides in pertinent part:

*314 This section provides machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute, by adopting the mercantile device of going ahead with delivery, acceptance, or payment "without prejudice," "under protest," "under reserve," "with reservation of all our rights," and the like. All of these phrases completely reserve all rights within the meaning of this section.
This at least suggests that a prerequisite for application of § 1-207 is the necessity for or possibility of a continuing performance, so that a check given as final payment upon the completion of performance is excluded. (Yelen view).
The contrary view appears to be supported by the Florida Code Comment:
This section offers a device of considerable practical value, in permitting a party to accept whatever he can get in payment, performance etc. without having to gamble with his legal rights to demand the balance of the payment or performance. It should be emphasized however, that the party relying on such rights must have stated explicitly to the other that he is reserving them, or that he is continuing under protest.
The sheer weight of authority appears to favor the Miller view. The question which we are at last required to answer is whether that view comports with logic and sound public policy and is discernible as the legislative intent in enacting the language we now attempt to apply.
We determine that it is not and therefore certify that our opinion expressly and directly conflicts with Miller v. Jung, supra.
It is our opinion that the statute in question may not be employed to defeat a compromise and settlement or accord and satisfaction where the requisite elements for either of those devices are present or where a check is tendered in final payment for goods or services and is appropriately endorsed by the drawer in clear and unequivocable language which check is then accepted and cashed by the payee.
We therefore reverse the final judgment and remand for entry of judgment for the defendants/appellants. Because appellants concede that they were not entitled to attorneys' fees at the trial level, those will be stricken.
REVERSED AND REMANDED.
LETTS, C.J., and MOORE and HERSEY, JJ., concur.