## Glen PILLOW and Terry DICUS, d/b/a PILLOW AND DICUS FARM *v.* THERMOGAS COMPANY OF WALNUT RIDGE

CA 82-111                                       644 S.W.2d 292

### Court of Appeals of Arkansas
### Opinion delivered December 1, 1982

*Henry & Morgan,* by: *John R. Henry,* for appellants.

No brief for appellee.

DONALD L. CORBIN, Judge. Appellants, Glen Pillow and Terry Dicus, requested appellee, Thermogas Company of Walnut Ridge, to apply 350 pounds of liquid fertilizer per acre to appellants' farmlands at a set per acre application cost. Appellee billed appellants for $7,631.55 representing a 309-acre application. Appellants then figured the application on 213 acres for a total of $4,872.33. Controversy arose

over what was the correct amount of the debt. Appellants mailed a check to appellee for $4,872.33 with a notation "acc in full" on the face of the check. Appellee scratched through this notation and wrote on the check "check not accepted in full payment of account. H. Dicus." The trial court awarded appellee judgment for the difference between the full amount claimed by appellee and the amount paid by check by appellants. We reverse.

The issue on appeal is whether an accord and satisfaction has been reached. In this one-brief case, appellants cite two pre-code cases. In *American Insurance Union* v. *Wilson*, 172 Ark. 841, 291 S.W. 417 (1927), the Supreme Court, at page 844, stated:

> The law is well stated in this state that where a debtor sends a check to his creditor to apply upon a disputed claim the reception and collection of the check by the creditor renders it an accord and satisfaction of the debt.

Further, at page 845, the Court stated:

> The term "liquidated" when used in connection with the subject of accord and satisfaction has reference to a claim which a debtor does not dispute.

Here, the record clearly reflects that there was no liquidated claim. Appellee's principal agent, Howard Dicus, testified that at the time he received appellants' check a controversy existed and that he cashed the check after marking through the notation "acc in full" and wrote "check not accepted in full payment of account. H. Dicus."

Appellant also cites *Root Refining Co.* v. *Brooks*, 192 Ark. 1, 90 S.W.2d 221 (1936), which stated the following rule from *Massachusetts Mutual Life Ins. Co.* v. *Peoples Loan & Investment Co.*, 191 Ark. 982, 88 S.W.2d 831 at page 5:

> When a claim is disputed or unliquidated, and the tender of a check or draft in settlement thereof is of such character as to give the creditor notice that it must be

accepted in full satisfaction of the claim or not at all, the retention and use thereof by the creditor constitutes an accord and satisfaction. (Citing cases).

It was there also said that it was not necessary that the dispute or controversy should be well founded, but that it was necessary that it should exist in good faith.

There, the payee-creditor received a check which contained this indorsement: "This check is given in payment of final payment on account of purchase of lease covering NE1/4 of the NW1/4, section 18, township 17 south, range 17 west, Union County, Arkansas." Before depositing the check for collection, the payee-creditor made the following notation on its back: "Payment on account but not final payment." The Court stated that the payee had the option of accepting the check as tendered or of returning it. He had made his election and was bound by it.

The same holds true here. Appellee's unilateral alteration is of no legal consequence. He had the option of accepting the check as tendered or of returning it.

The Uniform Commercial Code, Ark. Stat. Ann. § 85-1-207, provides:

A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice", "under protest" or the like are sufficient.

Arkansas has not yet interpreted Ark. Stat. Ann. § 85-1-207 as to its effect on the common law rule of accord and satisfaction. We hold that § 85-1-207 has not altered our common law rule of accord and satisfaction. If we were to decide that a creditor can reserve his rights on a "payment in full" check, it would seriously circumvent what has been universally accepted in the business community as a convenient means for the resolution of disagreements. Thus, we hold that the acceptance by a creditor of a check offered by

the debtor in full payment of a disputed claim is an accord and satisfaction of the claim. A unilateral action by the creditor in protest or an attempted reservation of rights by the alteration of a check offered as payment in full is of no legal consequence. See *Chancellor, Inc.. v. Hamilton Appliance Co.,* 175 N.J. Super. 345, 418 A.2d 1326 (1980).

Reversed.

COOPER, J., dissents.

JAMES R. COOPER, Judge, dissenting. This case raises a question of first impression in the State of Arkansas, whether the Uniform Commercial Code, Ark. Stat. Ann. § 85-1-207 (Add. 1961), has altered the common law rule of accord and satisfaction as it relates to "full payment checks". The majority, without any analysis, has reversed the trial court, and held that the common law rule has not been changed by the adoption of the Uniform Commercial Code in Arkansas.

In an attempted settlement of a disputed debt, appellants mailed a check for $4,872.33 to appellees with a notation "acc in full" on the face of the check. Appellee scratched through the notation and wrote, "check not accepted in full payment of account. H. Dicus." The trial court apparently found that this reservation of rights was effective, and awarded appellee judgment for the difference in the full amount claimed by it and the amount tendered by appellants. Neither the trial court nor either attorney mentioned the U.C.C.

The initial question in this case is whether the U.C.C. applies to this transaction, since U.C.C. § 1-207 is only applicable to transactions falling under the U.C.C.'s substantive articles, two through nine. *Peek Planting Co. v. W. H. Kennedy & Sons, Inc.,* 257 Ark. 669, 519 S.W.2d 49 (1975). In cases involving a check sent to a creditor and marked by the debtor as "payment in full" or words to that effect, some courts have looked at the underlying transaction to determine whether the provisions of the U.C.C. apply. *See, Van Sistine v. Tollard,* 95 Wis.2d 678, 291 N.W. 2d 636 (Wis. App.

1980); *Blottner, Derrico, Weiss & Hoffman* v. *Fier*, 101
Misc.2d 371, 420 N.Y.S.2d 999 (1979). Using such an
approach, it would be necessary to determine whether the
underlying transaction in the case at bar is a delivery of
services or a transaction in goods. If the underlying trans-
action is a delivery of services, then the U.C.C. does not
apply and the common law rule of accord and satisfaction
would control the decision in this case. However, if the
underlying transaction is a transaction in goods, then the
U.C.C. does apply, Ark. Stat. Ann. § 85-2-102 (Add. 1961),
and Ark. Stat. Ann. § 85-2-103 (4) (Add. 1961) makes Ark.
Stat. Ann. § 85-1-207 (Add. 1961) applicable.

I believe that a better approach would be to determine
whether the check is a negotiable instrument under Article 3
of the U.C.C., Ark. Stat. Ann. § 85-3-101 *et seq.* (Add. 1961).
This type of analysis would lead to uniformity in the law
concerning "full payment checks". After all, the overriding
purpose behind the enactment of the U.C.C. was to provide
uniformity in commercial law. If the check is a negotiable
instrument under Article 3 of the U.C.C., then Ark. Stat.
Ann. § 85-3-102 (4) (Add. 1961) makes Ark. Stat. Ann. §
85-1-207 (Add. 1961) applicable.

In order that a writing may be considered a negotiable
instrument, it must contain an unconditional promise to
pay and no other promise, order, obligation or power,
except as authorized by Article 3. Ark. Stat. Ann. § 85-3-104
(1) (b) (Add. 1961). The courts of the various states were split
on the issue of whether the addition of "payment in full" or
words to that effect were conditional and thus made the
check non-negotiable, until the addition of U.C.C. § 3-112
(1) (f). Ark. Stat. Ann. § 85-3-112 (1) (f) (Add. 1961). That
section provides that a term in a draft, which states that the
payee, by endorsing or cashing it, acknowledges full satis-
faction of an obligation of the drawer does not affect the
negotiability of the instrument. [1] Under this type of Article 3
analysis, uniformity in the law would be achieved, because
the same law would apply to all cases involving a check

---

[1] A check is a draft drawn on a bank and payable on demand. Ark. Stat.
Ann. § 85-3-104 (2) (b) (Add. 1961).

marked "payment in full" or words to that effect, regardless of the underlying transaction.

Since the check involved in the case at bar is a negotiable instrument under Article 3, the U.C.C. does apply, and it becomes necessary to determine whether Ark. Stat. Ann. § 85-1-207 (Add. 1961) has altered the common law rule of accord and satisfaction. Arkansas Statutes Annotated § 85-1-207 (Add. 1961) provides:

> A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice", "under protest" or the like are sufficient.

The courts in other jurisdictions are split on the effect of U.C.C. § 1-207. Several jurisdictions have held that U.C.C. § 1-207 does not alter the prior existing law of accord and satisfaction.[2] The basis for this view is that the legislature did not explicitly provide that U.C.C. § 1-207 was intended to modify the law of accord and satisfaction. Thus, it would appear that several legislatures adopted U.C.C. § 1-207 intending that it reflect existing law. This is especially so, when consideration is given to U.C.C. § 1-103, which provides:

> Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to

---

[2]*Connecticut Printers, Inc.* v. *Gus Kroesen, Inc.*, 184 Cal. Rptr. 436 (1982); *American Food Purveyors, Inc.* v. *Lindsay Meats, Inc.*, 153 Ga. App. 383, 265 S.E.2d 325 (1980) (but questioning the soundness of this theory); *Chancellor, Inc.* v. *Hamilton Appliance Co.*, 175 N.J. Super. 345, 418 A.2d 1326 (1980); *Eder* v. *Yvette B. Gervey Interiors, Inc.*, 407 So.2d 312 (Fla App. 1981); *Brown* v. *Coastal Truckways, Inc.*, 44 N.C. App. 454, 261 S.E.2d 266 (1980); *Jahn* v. *Burns*, 593 P.2d 828 (Wyo. 1979); *State of Washington, Dept. of Fisheries* v. *J-Z Sales Corp.*, 25 Wash. App. 671, 610 P.2d 390 (1980); *See also,* Hawkland, *The Effect of U.C.C.* § 1-207 on the Doctrine of Accord and Satisfaction by Conditional Check, 74 Com. L.J. 329 (1969); Rosenthal, *Discord and Dissatisfaction, Section 1-207 of the Uniform Commercial Code,* 78 Colum. L. Rev. 48 (1978).

contract, principal and agent, estoppel, fraud, misrepresentation, duress, corecion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions. [Ark. Stat. Ann. § 85-1-103 (Add. 1961)].

Also, the comment to the above section states that: "this section indicates the continued applicability to commercial contracts of all supplemental bodies of law, except insofar as they are *explicitly displaced* by this Act. "[Emphasis added.]

In *Eder* v. *Yvette B. Gervey Interiors, Inc.,* 407 So.2d 312 (Fla. App. 1981), the Florida Appellate Court, in stating its reason for holding that U.C.C. § 1-207 does not alter the prior existing law on accord and satisfaction, said:

> It is unfair to the party who writes the check thinking that he will be spending his money only if the whole dispute will be over, to allow the other party, knowing of that reasonable expectation, to weasel around the deal by putting his own markings on the other person's checks. There is no reason why § 1-207 should be interpreted as being an exception to the basic duty of good faith, when it is possible to interpret the two sections consistently.

Other jurisdictions have held that U.C.C. § 1-207 does alter the prior existing law of accord and satisfaction.[3]

---

[3]*Miller* v. *Jung,* 361 So.2d 788 (Fla. App. 1978); *Bivins* v. *White Dairy,* 378 So.2d 1122 (Ala. App. 1979) (approved in dictum); *Scholl* v. *Tallman,* 247 N.W.2d 490 (S.D. 1976); *Peterson* v. *Crown Financial Corp.,* 476 F.Supp. 1155 (E.D. Pa. 1979) (note); *Kilander* v. *Blickle Co.,* 280 Or. 425, 571 P.2d 503 (1977) (approved in dictum); *Lange-Finn Const Co., Inc.* v. *Albany Steel & Iron Supply Co., Inc.,* 94 Misc.2d 15, 403 N.Y.S. 2d 1012 (N.Y. Sup. Ct. 1978); *Kroulee Corp.* v. *A. Klein & Co., Inc.,* 103 Misc.2d 441, 426 N.Y.S.2d 206 (1980); *Braun* v. *C.E.P.C. Distributors, Inc.,* 77 App.Div.2d 358, 433 N.Y.S.2d 447 (1980) (New York's annotation to U.C.C. § 1-207 provides, "This section permits a party involved in a Code-covered transaction to accept whatever he can get by way of payment ... without losing his rights ... to sue for the balance of payment, so long as he explicitly reserves his rights.") *See also,* J. White & R. Summers, *The Law under the Commercial Code* § 13-21 (2d ed. 1980); Hawkland, *The Effect of U.C.C. § 1-207 on the Doctrine of Accord and Satisfaction by Conditional Check,* 74 Com. L.J. 329 (1969).

The U.C.C. was the joint work of the National Con-
ference of Commissioners on Uniform State Laws and the
American Law Institute. The first draft was completed in
1952. The New York Law Revision Commission undertook
the task of analyzing the U.C.C. section by section. Many
changes were made in the Official Draft of the U.C.C. as a
result of the recommendation of the New York Law Revi-
sion Commission. Prior to the adoption of the U.C.C. by
New York, the New York Commission on Uniform State
Laws submitted its report on the U.C.C., including section
by section annotations examining the relationship between
the U.C.C. provisions and the existing New York law. This
report stated in reference to U.C.C. § 1-207:

> The Code rule would permit, in Code-covered
> transactions, the acceptance of a part . . . payment
> tendered in full settlement without requiring the
> acceptor to gamble with his legal right to demand the
> balance of the . . . payment. [Report of the Commission
> on Uniform State Laws to Legislature of State of New
> York, pp. 19-20 (1961).]

We do not have that section by section annotations to
guide us in determining the intent of the Arkansas legisla-
ture in enacting U.C.C. § 1-207, but I think the New York
annotation, in light of the extensive and intense study done
there, is persuasive.

The policy of the Arkansas General Assembly in
adopting the Uniform Commercial Code[4] is that the courts
of this State are to attempt to give the Uniform Commercial
Code a uniform interpretation, not only within this state,
but also with those of other states. Ark. Stat. Ann. § 85-1-102
(2) (c) (Add. 1961). However, since the courts in other states
are split on the effect that U.C.C. § 1-207 has on the prior
existing law of accord and satisfaction, this Court may
decide this question by adopting the "better" of the two
interpretations. I believe the better rule, leading to greater
uniformity, is that, in Article 3 cases, U.C.C. § 1-207
displaces the common law rule of accord and satisfaction.

---

[4]Act No. 185 of 1961.

410

It seems to me more logical to hold that the common law rule of accord and satisfaction has been modified by U.C.C. § 1-207. Contrary to the majority view, the law of accord and satisfaction will not be destroyed by the viewpoint expressed herein. Accord and satisfaction will continue to be an effective tool for compromise where rights are not specifically reserved. Its availability for the settlement of disputes through compromises made in good faith would not be affected.

I would affirm the decision of the trial court.

I am authorized to state that Judge Glaze joins in this dissenting opinion.