**RMP INDUSTRIES, LTD.,**
Plaintiff-Appellant,

v.

**The LINEN CENTER and Richard A. Brown, Defendants-Appellees.**

No. 85–459.

Court of Appeals of Iowa.

Jan. 29, 1986.

Frederick B. Anderson and Linda L. Haley, of Williams, LaMarca, Marcucci, Wiggins & Anderson, P.C., Des Moines, for plaintiff-appellant.

Paul R. Tyler and Charles F. Becker, of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for defendant-appellee Brown.

Monte R. Hanson, of Brown, Winick, Graves, Donnelly & Baskerville, Des Moines, for defendant-appellee Linen Center.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

The plaintiff appeals from a summary judgment for the defendants in this contract action claiming that the district court erred by concluding the pleadings established all the elements of the defense of accord and satisfaction. We affirm.

The defendant, Richard Brown, was the general contractor to perform a remodeling project for a co-defendant, The Linen Center. The plaintiff, RMP Industries, was a subcontractor hired by Brown for $2,850 to erect shelving which was a part of the remodeling project. The shelving was delivered on time, but RMP was unable to perform the installation work because the carpet was not laid. To complete the project on time, overtime work was required. The parties agreed to the overtime wage, but not the amount of time the project would take.

After performing its work, RMP sent Brown a bill for $8,951 representing actual time spent to complete the project. Brown objected to the amount of the bill and offered to pay $4,300, which represented an amount equal to the time Brown thought the job should have taken. RMP rejected this offer. Brown then sent RMP a check for $4,300. The back of the check contained the following language:

> The undersigned payee hereby accepts the check as *payment in full* for all sums due it in connection with installation of shelves and fixtures at 4100 Merle Hay Rd., for the Linen Center subcontracted to Richard A. Brown & Son. (emphasis in original).

Ronald M. Patterson, the president of RMP, cashed this check after consulting counsel; however, he endorsed it with the words "under protest—all rights reserved without prejudice Chapter 554, Iowa Code."

Patterson later testified that he was reluctant to cash the check, but felt he had no alternative because he needed the money to pay his workers. .

After cashing the check, RMP filed the present suit for breach of contract against Brown and The Linen Center, seeking the remainder of the amount he had billed Brown. Brown asserted as an affirmative defense that the tender and acceptance of the $4,300 check had constituted an "accord and satisfaction" barring any suit for further payment for the same work. Brown and The Linen Center then moved for summary judgment on this ground. The district court found that an accord and satisfaction had occurred and granted the defendants summary judgment.

On appeal, RMP argues the district court erred by concluding that the pleadings established the elements of the defense of accord and satisfaction. RMP also submits the Iowa Uniform Commercial Code governs this transaction.

**I.**

■ Iowa authority provides the defendant, in this case Brown, bears the burden of proof to an accord and satisfaction by a preponderance of the evidence. *Electra Ad Sign, Inc. v. Cedar Rapids Truck Center*, 316 N.W.2d 876, 880 (Iowa 1982). An accord and satisfaction requires valid consideration which is offered, intended, and accepted as full satisfaction of the original claim. *Id.* at 879. Stated otherwise:

> [T]he authorized acceptance of money offered in satisfaction of a genuinely disputed claim, if accompanied by acts and declarations which amount to a condition that, if accepted, it is in satisfaction of the claim, amounts to an accord and satisfaction. A party to whom such an offer is made has no alternative but to refuse and return the money, or to accept, and if he accepts on those conditions, his claim is cancelled. *Olson v. Wilson & Co.*, 244 Iowa 895, 58 N.W.2d 381; *Minnesota & Ontario Paper Co. v. Register & Tribune Co.*, 205 Iowa 1228,

219 N.W. 321; *Schultz v. Farmers Elevator Co.*, 174 Iowa 667, 156 N.W. 716. *Mayrath Co. v. Helgeson*, 258 Iowa 543, 547, 139 N.W.2d 303, 305 (1966). RMP does not dispute that the funds were offered as a satisfaction of claims and that Brown intended such funds to constitute full payment. RMP contests the finding of a genuine dispute, an unliquidated debt, and its purported intent to accept the check as full payment.

## II.

RMP goes to great lengths to claim Brown unilaterally created a dispute so that the defense did not constitute valid consideration. We disagree with RMP's assertions. The parties entered into an agreement to pay various hourly wages for overtime work, but did not mention how many hours such work would take. RMP submitted its bill for overtime wages of $6,100. Brown felt too many overtime hours were billed and offered $1,450 as a figure representing an amount of overtime wages he felt the project should have cost.

■ RMP's bill was nearly four times that of the original agreement which prompted Brown to contact RMP and discuss the matter. A dispute naturally arose as to the amount owed for RMP's services. RMP contends there was no genuine dispute about the amount owed it, that Brown's $4,300 check was merely an attempt to avoid part of Brown's undisputed $8,951 obligation, and that the defense of accord and satisfaction therefore does not bar this suit. We, nevertheless, conclude a genuine dispute existed as to the amount of overtime hours RMP billed which Brown was responsible to pay.

■ Notwithstanding RMP's contentions to the contrary, we also find that the debt was not a liquidated amount under Iowa law. *See Olson*, 244 Iowa at 901, 58 N.W.2d at 385 ("If it is admitted that one of two sums is due, but there is a dispute as to which is the proper amount, the demand is unliquidated within the meaning of accord and satisfaction." (citations omitted)).

RMP cites *Acton Construction Co. v. State*, 363 N.W.2d 130 (Minn.Ct.App.1985), as authority for the proposition that when a check is negotiated which is for less than the total disputed amount with "under protest" language or similar terms, an accord and satisfaction does not result. Our case, however, is distinguishable. In *Acton*, a dispute arose regarding the amount of liquidated damages in a construction contract. The State sent a certificate indicating that the contractor had performed the required services and the State provided an amount it would pay. The contractor returned the certificate but expressly reserved its rights for additional compensation. After receiving the reservation letter, the State, nevertheless, issued a check which was negotiated. The court stated:

> [The contractor's] negotiation of the check did not constitute an accord and satisfaction. The State was aware of the reservation of rights when it sent the check to Acton. Acton was not thereafter contacted by the State, so when it negotiated the check it was entitled to presume that the State accepted its reservation of rights. Thus it cannot be said that both parties understood that the State was paying all demands in full.

*Id.* at 134.

■ In our case, Brown was not aware of RMP's reservation of rights when the check was issued so that RMP could not have reasonably believed Brown would pay the higher amount. RMP negotiated the check without Brown having any prior knowledge of the "under protest" language. Thus, RMP was *not* entitled to presume Brown accepted its reservation of rights.

## III.

The most challenging issue presented is whether RMP's adding the "under protest" language before cashing the check for $4,300 which purported to be payment in full from Brown constituted an acceptance under accord and satisfaction law. RMP contends it was not an acceptance because

it conditionally cashed the check; whereas, Brown submits the act of cashing a check can only be interpreted as accepting the offer under the common law so that the "under protest" language was, in effect, irrelevant.

Arguably, the outcome of this could depend upon whether the Iowa UCC or common law rule of accord and satisfaction applies. Not surprisingly, RMP contends the UCC does apply and that the "under protest" language is valid under Iowa Code section 554.1207 (1985) so as to negate any purported acceptance. Brown takes the opposing view by contending the UCC does not apply and, even if the UCC does apply, the reservation of rights is inconsequential.

One commentator has cogently discussed the apparent tension between the common law and UCC on accord and satisfaction:

> Under common law principles, the debtor can feel secure in tendering to his creditor an amount less than that claimed by the latter by a check that clearly indicates that it is in full settlement of a bona fide dispute. The tender is considered to be an offer by the debtor to compromise the disputed claim by paying more than he believes to be due but less than the creditor claims. The creditor either may reject the offer by returning or destroying the check or accept it by cashing the check. If he chooses the latter course of action, an accord and satisfaction is effected at the moment he receives payment on the check. . . .

With the enactment of the Uniform Commercial Code, the validity of the common law doctrine of accord and satisfaction in the case under discussion is seriously in doubt. Section 1–207 of the U.C.C. appears on its face to provide the machinery for a creditor to cash a check ten-

dered by his debtor in full settlement of a disputed claim and still preserve his right to sue for the balance of his claim provided he explicitly reserves that right. If the section is applied literally, such a reservation could be made merely by indorsing the check "under protest" or "without prejudice" or by giving notice to the debtor that his check is not accepted in full settlement of his claim and that the creditor is reserving the right to sue for the balance of the claim at a later time.

Hawkland, *The Effect of UCC § 1–207 on the Doctrine of Accord and Satisfaction by Conditional Check*, 74 Com.L.J. 329, 330 (1969). If the common law doctrine of accord and satisfaction applies, Brown is undoubtedly entitled to summary judgment. If the UCC applies, a less clear result would be in order. Previous Iowa authority only addresses the common law doctrine of accord and satisfaction and does not address Iowa Code § 554.1207.

To support its position that an accord and satisfaction did not occur, RMP relies upon Iowa Code § 554.1207 (1985) which provides:

> A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice", "under protest" or the like are sufficient.

The jurisdictions which have considered the effect of UCC § 1–207 upon the common law doctrine of accord and satisfaction have split, but the majority view is that § 1–207 does not alter the common law doctrine.[1] The Iowa UCC comments do not

---

1. Some authorities provide that § 1–207 of the Uniform Commercial Code has altered the common law of accord and satisfaction, *see Braun v. C.E.P.C. Distributors, Inc.,* 77 App.Div.2d 358, 433 N.Y.S.2d 447, 449–50 (1980); *Bivins v. White Dairy,* 378 So.2d 1122, 1124 (Ala.Civ.App.1979) (dictum); *Scholl v. Tallman,* 247 N.W.2d 490, 492 (S.D.1976); Calamari & Perillo, Contracts (2d Ed.1977) § 5–16; White & Summers, Uniform Commercial Code (2d Ed.1980) § 13–21.

The majority view is that § 1–207 does not affect the common law of accord and satisfaction. *See Milgram Food Stores, Inc. v. Gelco Corp.,* 550 F.Supp. 992 (W.D.Mo.1982); *Stultz Electric Works v. Marine Hydraulic Engineering Co.,* 484 A.2d 1008 (Me.1984); *Les Schwab Tire Centers v. Ivory Ranch,* 63 Or.App. 364, 664 P.2d 419 (1983); *Pillow v. Thermogas Company of Walnut Ridge,* 6 Ark.App. 402, 644 S.W.2d 292 (1982); *Connecticut Printers, Inc. v. Gus Kroe-*

mention whether a modification of the doctrine was intended. When faced with a similar situation regarding the statutory meaning of § 1–207, another court held § 1–207 did not alter the common law of accord and satisfaction.[2]

We do not need to reach the issue of whether section 1–207 altered the Iowa common law doctrine of accord and satisfaction because the code, itself, cannot apply unless the underlying transaction is subject to the code. RMP contends that enough goods were supplied to bring the transaction within Article 2 and, if Article 2 does not apply, Article 3 applies because commercial paper is involved. We find both arguments miss the mark.[3]

Iowa authority, *M & W Farm Service Co. v. Callison*, 285 N.W.2d 271, 274 (Iowa 1979), which clearly discusses the distinction between "goods" and "services" provides:

---

*sen, Inc.*, 134 Cal.App.3d 54, 184 Cal.Rptr. 436 (1982); *R.A. Reither Construction Inc. v. Wheatland Rural Electric*, 680 P.2d 1342 (Colo.Ct.App. 1982); *Kelly v. Kowalsky*, 186 Conn. 618, 442 A.2d 1355 (1982) (noted disagreement, but did not take a position on the issue); *Eder v. Yvette B. Gervey Interiors Inc.*, 407 So.2d 312 (Fla.Dist. Ct.App.1981); *American Food Purveyors, Inc. v. Lindsay Meats, Inc.*, 153 Ga.App. 383, 265 S.E.2d 325 (1980); *Chancellor, Inc. v. Hamilton Appliance Co., Inc.*, 175 N.J.Super. 345, 352, 418 A.2d 1326 (1980); *Brown v. Coastal Truckways, Inc.*, 44 N.C.App. 454, 458, 261 S.E.2d 266 (1980); *State Department of Fisheries v. J-Z Sales Corporation*, 25 Wash.App. 671, 681–82, 610 P.2d 390, 395–96 (1980); *Van Sistine v. Tollard*, 95 Wis.2d 678, 291 N.W.2d 636 (Ct.App.1980); *Gallagher Lumber Co. v. Shapiro*, 137 Vt. 139, 400 A.2d 984 (1979); *Jahn v. Burns*, 593 P.2d 828, 830 (Wyo. 1979); *Fritz v. Marantette*, 404 Mich. 329, 273 N.W.2d 425 (1978); Carabello, *The Tender Trap: UCC § 1–207 and Its Applicability to an Attempted Accord and Satisfaction By Tendering a Check in a Dispute Arising From a Sale of Goods*, 11 Seton Hall L.Rev. 445 (1981); Rosenthal, *Discord and Dissatisfaction: Section 1–207 of the Uniform Commercial Code*, 78 Colum.L.Rev. 48 (1978). The Restatement (Second), Contracts (1981) § 281, commend d, opines that "§ 1–207 ... need not be read as changing" the common law rules.

As one writer has said:

... Permitting the creditor to reserve his rights to sue under section 1–207 would not result in performance along the lines of the contract, but rather would allow the creditor to divert a tender under a new contract to his own benefit while disregarding the contractual conditions upon which it was presented. This outcome was certainly not intended by the statute. Comment, *Accord and Satisfaction: Conditional Tender by Check Under the Uniform Commercial Code*, 18 Buffalo L.Rev. 539, 544–45 (1969).

Another commentator suggests:

Neither the language, nor commentary, nor history of section 1–207 is independently conclusive. Read together, however, they strongly suggest that the provision was designed to deal with problems of waiver, election of remedies, and estoppel rather than with attempt-

---

ed accord and satisfaction. McDonnell, *Purposive Interpretation of the Uniform Commercial Code: Some Implications for Jurisprudence*, 126 U.Pa.L.Rev. 795, 827–28 (1978).

**2.** The court in *Les Schwab Tire Centers v. Ivory Ranch*, 63 Or.App. 364, 368–72, 664 P.2d 419, 422–23 (1983), stated:

Another clue is what the statute and its comments do not say. The Uniform Commercial Code generally indicates where the common law is changed, *see, e.g.,* ORS 72.–2090(1); 72.2070. Nothing in ORS 71.2070, its comments or its cross reference indicate a change in the law of accord and satisfaction.

\* \* \* \* \* \*

We believe that Section 1–207 was designed to serve a purpose unrelated to accord and satisfaction. Its purpose was to protect against waiver and estoppel. *Cf.* Anderson, *The Uniform Commercial Code* §§ 1–207:3, 1–207:4 (1970). Without the protection of ORS 71.–2070, a party might waive the right to recover fully by acquiescence in another's nonconforming conduct. *See* ORS 72.2090(4). Without such protection a buyer might be barred from a remedy for acceptance of nonconforming goods. *See* ORS 72.6070. These problems, however, have little to do with a creditor and debtor reaching a new agreement through accord and satisfaction.

\* \* \* \* \* \*

We understand ORS 71.2070 to mean that, when a creditor receives an *ordinary* check, he may reserve rights and accept the check in part payment without danger of estoppel or waiver, but where the check is tendered as an offer to reach an accord, and on the condition that it be cashed only in satisfaction, ORS 71.2070 does not apply. (emphasis added).

**3.** Had either Article 2 or 3 of the UCC applied so as to make section 1–207 applicable, this court in all likelihood would have followed the majority rule and concluded that section 1–207 did not change the common law doctrine of accord and satisfaction. Thus, our result would have been the same because the common law doctrine would prevail whether or not the UCC applied.

To determine whether a mixed contract should be covered as a sale of goods under the UCC, ... [for goods and services], the test is not whether the contract is mixed, but whether [its] *predominant factor*, [its] thrust, [its] purpose, reasonably stated, is the rendition of service, with goods incidentally involved (*e.g.*, contract with artist for painting) or is a transaction of sale, with labor incidentally involved (*e.g.*, installation of a water heater in a bathroom)." *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974); *cf. Ranger Const. Co. v. Dixie Floor Co., Inc.*, 433 F.Supp. 442, 444 (D.S.C.1977).

In *M & W*, the court stated that the providing of gas tanks for storing LP gas was only an incidental service of supplying LP gas such that the UCC governed the transactions. We find, however, that the facts in this case more closely resemble those in *Van Sistine v. Tollard*, 95 Wis.2d 678, 291 N.W.2d 636 (Ct.App.1980) and *Horn Waterproofing Corp. v. Bushwick Iron & Steel Co., Inc.*, 105 A.D.2d 684, 481 N.Y. S.2d 125 (1985).

*Van Sistine* involved a siding contractor who agreed to "install a kitchen picture window, install slider windows [furnished by customer] in the bathroom and hallway" and various other repairs. *Id.* 291 N.W.2d at 637. The court noted over one-half of the billed amount was for labor and the remainder was for materials. In applying the "predominant factor" test, the court held the contract involved "additions is the furnishing of services, with an incidental sale of materials. Accordingly, the transaction is not subject to the Uniform Commercial Code—Sales and sec. 1–207 of the

code [sec. 401.207, Stats.] is inapplicable." *Id.* 291 N.W.2d at 639.

In *Horn Waterproofing*, the parties entered into an agreement whereby plaintiff-creditor was to perform repair work to correct a leaky roof. Subsequently, a dispute arose as to the value of services. The debtor tendered a check for less than the amount the creditor wanted which was marked "payment in full." The creditor added the endorsement "under protest" and negotiated the check. The New York court held the contract was for work, labor, and services in patching the debtor's roof and no reference to any particular goods to be used was made. Even though New York law provides § 1–207 altered the common law of accord and satisfaction, the court held that the UCC was not applicable and the common-law ruled the creditor's action.

Similarly, we find the "predominant factor" in this transaction was unquestionably for services. The written proposal indicates RMP was to install shelving which "includes labor only/unpackaging/assembly/clean job site of debris net $2,600/unloading approximately 1½ trucks of shelving $250." Thus, the entire original agreement appears to have been only for labor and services valued at $2,850. The additional $6,101 costs were also for labor and services. RMP has made no allegation that goods were supplied. Even if some goods were supplied, they would be incidental so that Article 2 would not apply.

RMP contends that if Article 2 does not apply, then Article 3 applies. Although this position has been previously advocated,[4] we do not believe Article 3 applies.

---

**4.** In *Pillow v. Thermogas Co. of Walnut Ridge*, 6 Ark.App. 402, 405–10, 644 S.W.2d 292, 294–95 (1982), dissenting Judge Cooper, joined by Judge Glaze, stated that under § 1–207, the goods versus services distinction was not the proper inquiry. Rather, he declared:

I believe that a better approach would be to determine whether the check is a negotiable instrument under Article 3 of the U.C.C., Ark. Stat.Ann. § 85–3–101 *et seq.* (Add.1961). This type of analysis would lead to uniformity in the law concerning "full payment checks". After all, the overriding purpose behind the

enactment of the U.C.C. was to provide uniformity in commercial law. If the check is a negotiable instrument under Article 3 of the U.C.C., then Ark.Stat.Ann. § 85–3–102(4) (Add.1961) makes Ark.Stat.Ann. § 85–1–207 (Add.1961) applicable.

In order that a writing may be considered a negotiable instrument, it must contain an unconditional promise or order to pay and no other promise, order, obligation or power, except as authorized by Article 3. Ark.Stat. Ann. § 85–3–104(1)(b) (Add.1961). The

When interpreting an accord and satisfaction issue involving § 1–207, we cannot find any precedent, other than the dicta in *Hanna v. Perkins*, 2 UCC Rep. 1044 (Westchester [N.Y.] County Court 1965) and the *Pillow* dissent RMP directs us to, which states that Article 3 should be applied under circumstances present in this case.

■ We hold that the common law doctrine of accord and satisfaction applies so that RMP's negotiation of the check which contained a "reservation of rights," even viewed in the light most favorable to RMP, was still an acceptance. We leave the issue of the effect of § 554.1207 on the common law doctrine of accord and satisfaction until another day. We affirm the trial court's ruling.

AFFIRMED.

HAYDEN, J., concurs.

SACKETT, J., specially concurs.

SACKETT, Judge (specially concurring).

I concur with the majority in affirming the trial court's entry of summary judgment for defendants. I do not, however, concur with the language of the opinion.

courts of the various states were split on the issue of whether the addition of "payment in full" or words to that effect were conditional and thus made the check nonnegotiable, until the addition of U.C.C. § 3–112(1)(f), Ark.Stat. Ann. § 85–3–112(1)(f) (Add.1961). That section provides that a term in a draft, which states that the payee, by endorsing or cashing it, acknowledges full satisfaction of an obligation of the drawer does not affect the negotiability of the instrument. Under this type of Article 3 analysis, uniformity in the law would be achieved, because the same law would apply to all cases involving a check marked "payment in full" or words to that effect, regardless of the underlying transaction.

Since the check involved in the case at bar is a negotiable instrument under Article 3, the U.C.C. does apply, and it becomes necessary to determine whether Ark.Stat.Ann. § 85–1–207 (Add.1961) has altered the common law rule of accord and satisfaction.

He concluded that § 1–207 did alter the doctrine of accord and satisfaction.