FRITZ v MARANTETTE

Docket No. 59605. Argued June 7, 1978 (Calendar No. 8).—Decided
December 28, 1978. Rehearing denied 406 Mich 1103.

John Fritz brought an action to recover the unpaid balance on an
oral contract to sell 20,000 bushels of corn for $24,000 against
Bud Marantette, doing business as J & M Seed Service. The
defendant argued that the plaintiff's indorsement of his check
in payment of $15,252.21 constituted an accord and satisfaction.
A printed condition on the face of the defendant's check stated,
"By endorsement this check when paid is accepted in full
payment of the following account". Below the printed state-
ment was handwritten "corn contract paid in full". The plain-
tiff orally protested the conditional payment and scratched out
the handwritten words before negotiating the check. He then
began an action for the balance of the contract price. The
defendant argued that an accord and satisfaction occurred as a
matter of law when the plaintiff negotiated the conditioned
check. A jury in the 8th District Court, Charles A. Pratt, J.,
found a verdict for the plaintiff. The Kalamazoo Circuit Court,
Robert L. Borsos, J., reversed on the ground that in cashing the
check the plaintiff had entered an accord and satisfaction. The
Court of Appeals, Beasley, P.J., and R. B. Burns and J. H.
Gillis, JJ., affirmed in an unpublished per curiam opinion
(Docket No. 27461). Plaintiff appeals. *Held:*

1. Whether negotiation of a check, after striking part of a
restrictive condition and protesting the amount received, acts
as an accord and satisfaction is a question for the jury unless
the evidence is insufficient to submit to the jury or is undis-
puted. One of the key elements of an accord and satisfaction,
which the trier of fact must find, is a meeting of the minds.

2. In this case the plaintiff's conduct and the testimony show
a question of fact. There was testimony that, when the defend-
ant stated he was deducting a particular amount from the
contract price, the plaintiff refused to ship the rest of the corn.
The defendant then agreed to the original price per bushel,

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 1 Am Jur 2d, Accord and Satisfaction § 11.
[2] 1 Am Jur 2d, Accord and Satisfaction § 4.

implying that no deduction would be made. The jury could find that the debt was liquidated and undisputed, so that payment of less than the full amount would not discharge the balance. The facts also indicate that the defendant only deducted the amount of his asserted damages because of the delivery of inferior corn. Thus, alternatively, the jury could find that the amount paid was the undisputed portion of the corn contract, which would not represent any compromise or settlement because the defendant merely paid what both sides acknowledged was due. Therefore, it was not erroneous to allow the case to go to the jury.

3. The Court declines to decide the applicability to a full-payment check of the provision in Article 1 of the Uniform Commercial Code governing an explicit reservation of rights in assenting to performance in a manner offered by the other party. In view of the limited precedent and the lack of agreement among legal scholars on this issue, this case is decided upon the common-law principles of accord and satisfaction.

The decision of the Court of Appeals is reversed and the judgment of the district court is reinstated.

1. ACCORD AND SATISFACTION — NEGOTIABLE INSTRUMENTS — CONDITIONAL PAYMENT.

Whether negotiation of a check, after striking part of a restrictive condition and protesting the amount received, acts as an accord and satisfaction is a question for the jury unless the evidence is insufficient to submit to the jury or is undisputed.

2. ACCORD AND SATISFACTION — ELEMENTS.

One of the key elements of an accord and satisfaction, which the trier of fact must find, is a meeting of the minds.

3. ACCORD AND SATISFACTION — NEGOTIABLE INSTRUMENTS — CONDITIONAL PAYMENT.

Whether there was an accord and satisfaction was presented as a question of fact by a plaintiff's conduct in negotiating a check after striking part of a restrictive condition and protesting the amount received in a sale of corn and testimony that, when the defendant stated he was deducting a particular amount from the contract price, the plaintiff refused to ship the rest of the corn; the defendant then agreed to the original price per bushel, implying that no deduction would be made, from which the jury could find that the debt was liquidated and undisputed, so that payment of less than the full amount would not discharge the balance; and the facts also indicate that the defendant only deducted the amount of his asserted damages because

of the delivery of inferior corn and thus, alternatively, the jury could find that the amount paid was the undisputed portion of the corn contract, which would not represent any compromise or settlement because the defendant merely paid what both sides acknowledged was due.

*Gergely & Foley, P.C.* (by *Michael C. Gergely* and *Stephen D. Gorsalitz),* for plaintiff.

*Deming, Hughey, Benson, Keiser & Allen* for defendant.

BLAIR MOODY, JR., J. The plaintiff, John Fritz, orally agreed to sell 20,000 bushels of corn to the defendant, Bud Marantette, who purchased for resale to a Chicago broker. Defendant subsequently realized that it was not possible to obtain the contract price on the Chicago market, because the corn was not of the expected grade. Defendant checked the prevailing prices on the Toledo market and notified plaintiff that he could receive more on the Toledo market. The contract price for the Toledo market, to which the parties agreed, was approximately $24,000, $1.24 or $1.25 per bushel.

After the corn was delivered, defendant sent plaintiff a check for $15,252.21 ($24,000 less the Chicago damages), containing the standard printed statement:

"By endorsement this check when paid is accepted in full payment of the following account."

The following phrase was handwritten under the printed form language: "corn contract paid in full".

After fruitless conversations with the defendant, plaintiff crossed out the handwritten phrase and deposited the check. He then commenced this

action in district court for the balance of the contract price. Defendant answered the complaint and counter-claimed for breach of a separate alleged contract.

Defendant claimed that plaintiff was aware of the contractual obligation to the Chicago dealer and agreed to a deduction of the cost of making good on that contract. Plaintiff denied that agreement. Plaintiff claimed that when defendant notified him that a deduction would be made from the net contract price, he refused to let defendant remove the remaining 10,000 bushels of corn. Plaintiff further claimed that defendant then agreed to pay the $1.24 or $1.25 per bushel, implying that there would be no deductions for the losses suffered on the Chicago agreement.

Defendant argued in district court that an accord and satisfaction occurred as a matter of law when plaintiff negotiated the conditioned check for $15,252.21. The district court disagreed; the jury returned a verdict for plaintiff and found no cause of action on defendant's counter-claim. On appeal, the circuit court agreed with the defendant and reversed the jury award. The Court of Appeals, in an unpublished per curiam opinion, affirmed the circuit court. We granted leave to appeal. 402 Mich 825 (1977).

I

The issue on appeal is whether the negotiation of a check, after striking part of a restrictive condition and protesting the amount received, acts as an accord and satisfaction. Under Michigan case law the answer to this question depends upon the facts of the individual case. In most cases a jury-submissible question of fact is presented. The case of *Urben v Public Bank,* 365 Mich 279; 112

NW2d 444 (1961), is enlightening in deciding the instant dispute as it also involved a conditioned check.

Plaintiff Urben deposited, without endorsing, defendant bank's check which stated, "salary and overtime pay through August 14, 1958, plus 2 weeks' severance pay in lieu of notice". Urben verbally protested the amount received, as being less than that to which he was entitled, before depositing the check. In his suit against the bank for back pay, the trial court found that the testimony presented a question of fact as to the establishment of an accord and satisfaction. The jury found no accord and satisfaction, awarding the plaintiff the disputed amount.

This Court affirmed the jury award, recognizing the following legal principle:

"[U]nless the evidence is insufficient to submit to the jury, or is undisputed and not open to opposing inferences—accord and satisfaction, including the various elements thereof, is a question of fact to be determined by the jury or by the court where it is the trier of the facts". *Urben, supra,* 286.

Another illustrative case is *Gitre v Kessler Products Co, Inc,* 387 Mich 619; 198 NW2d 405 (1972). The plaintiffs in that case received checks with the notation "Endorsement and payment of the within check constitutes a full release by the payee of all claims for commission or otherwise against the drawer and its affiliates", and another notation using almost identical language. The checks were endorsed with the plaintiff corporation's rubber stamp and deposited in its account.

In plaintiffs' suit to recover contract damages and commissions still due, the trial court granted defendants' motion for accelerated judgment based

upon the doctrines of release and accord and satisfaction. This Court remanded for trial on all disputed claims, noting:

"As to whether a rubber-stamped endorsement operates as an automatic accord and satisfaction by virtue of restrictive conditions on a check, we note that since an accord is a contract, *an essential requisite is a 'meeting of the minds.'* Obremski v Dworzanin, 322 Mich 285 [33 NW2d 796] (1948). Whether these plaintiffs and defendants had a 'meeting of the minds' regarding the purported effect of the restrictive endorsements on the reverse side of the checks, we could not say, as a matter of law, that the mere rubber stamp endorsement, without more, constituted a full agreement to accept such restrictive conditions." (Emphasis added.) *Gitre, supra,* 624.

Review of yet another case is helpful in resolving the instant dispute. In *Melick v Nauman Vandervoort, Inc,* 54 Mich App 171; 220 NW2d 748 (1974), *rev'd by order* 393 Mich 774; 224 NW2d 280 (1974), the plaintiffs sued for an amount they claimed was still due, after endorsing defendant corporation's checks which carried the notations "Final Payment" and "Final Payment re purchase Capital Stock". The trial court specifically found that the parties had not intended an accord and satisfaction. *Melick, supra,* 174. Nevertheless, the Court of Appeals reversed, finding an accord and satisfaction.

This Court, by order, reinstated the trial court's judgment "for the reason that the trial court's finding of fact that the parties did not intend an accord and satisfaction is adequately supported by the record and is not clearly erroneous". 393 Mich 774.

Therefore, it is clear that whether a particular set of facts amounts to an accord and satisfaction

is generally a question of fact for the fact finder. One of the key elements, which the trier of fact must find to reach the conclusion that an accord and satisfaction exists, is a "meeting of the minds".

In the instant case, plaintiff's conduct and the testimony of the parties presents a question of fact as to whether the negotiation of the conditioned check constituted an accord and satisfaction. We find, therefore, that the trial court was not in error in submitting the question to the jury.

Two interpretations of the facts could support the jury determination in favor of the plaintiff. First, the jury could find that the debt was liquidated and undisputed. Testimony indicated that when defendant stated he was deducting a particular amount from the agreed contract price, plaintiff refused to ship the rest of the corn. Defendant then agreed to the original bushel amount, implying that no deductions would be made. Under the majority rule, where the debt is liquidated, payment of less than the full amount does not discharge the balance even though the amount paid was tendered and accepted as full payment. 6 Corbin, Contracts, § 1289, p 163; Calamari and Perillo, Contracts, § 65, p 129.

Alternatively, the jury could find that the amount paid represented the undisputed portion of the corn contract. The facts indicate that the so-called "dispute" concerned only the amount to be deducted for damages assertedly suffered because of the delivery of inferior corn. The defendant deducted the full amount of the asserted damages and thus the amount deducted does not represent any compromise or settlement. The defendant "merely paid what both sides acknowledged was due". See *Gitre, supra,* 624, to support the proposi-

tion that payment of the undisputed portion of a contract will not support an accord and satisfaction discharging the balance.

Accordingly, we hold that it was not error for the district court to allow the case to go to the jury. The circuit court and Court of Appeals decisions to the contrary are reversed and the jury award in favor of the plaintiff is reinstated.

## II

In 1962, the Legislature enacted the Uniform Commercial Code. MCL 440.1101 *et seq.;* MSA 19.1101 *et seq.* Section 1-207 of the UCC, MCL 440.1207; MSA 19.1207, provides:

"A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice', 'under protest' or the like are sufficient."

This section of the code has been interpreted as permitting a payee to endorse a conditional check with the words "without prejudice" or "under protest" or similar reservation and thereby avoid the condition and the operation of the doctrine of accord and satisfaction:

"In summary the tender of a check in full satisfaction of a disputed amount will still constitute an offer of an accord and satisfaction. If the payee indorses without 'protest' or similar reservation, he will be bound by the accord and satisfaction (at least if there was a *bona fide* dispute and the drawer is offering some concession). We

believe that the enactment of 1-207 has substantially changed the outcome when the payee adds words of 'protest' to his indorsement. Certainly the post-Code case law indicates that 1-207 authorizes the payee who signs under protest to accept the amount of the check without entering an accord and satisfaction or otherwise forsaking his claim to any additional sum allegedly due him." White & Summers, Handbook of the Law Under the Uniform Commercial Code, § 13-21, pp 453-454.

Notwithstanding the UCC hornbook and the limited judicial authority[1] supporting this interpretation, academicians disagree as to whether § 1-207 applies to a full-payment check. A recent, scholarly law review article illustrates the deluge of problems that would be created by adopting this application of § 1-207. See Rosenthal, *Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code,* 78 Columbia L Rev 48 (1978).

The article sets forth reasons for refusing to apply the language of UCC § 1-207 to the full-payment check. It suggests such an interpretation of § 1-207 would make informal settlements of disputes considerably more difficult and would have the potential to substantially increase litigation. Accordingly, commercial transactions between businessmen, dealing at arm's length, would lack finality.

Furthermore, the legislative history of the UCC is not supportive of such interpretation according to the article, since the presence of both § 1-207

---

[1] Only four cases have been found in which the question of the applicability of § 1-207 to the full-payment check has ever been mentioned. *Scholl v Tallman,* — SD —; 247 NW2d 490 (1976); *Baillie Lumber Co v Kincaid Carolina Corp,* 4 NC App 342; 167 SE2d 85 (1969); *Hanna v Perkins,* 2 UCC Rep Ser 1044 (Westchester Co Ct, NY, 1965); *Kilander v Blickle Co,* 280 Or 425; 571 P2d 503 (1977). The first three cases are treated analytically in Rosenthal, *Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code,* 78 Columbia L Rev 48 (1978).

and § 3-802(3)[2] in the 1952 Official Draft of the UCC, without any cross-referencing to each other, suggests that § 1-207 was not conceived as affecting the efficacy of the full-payment check:

"[I]f so fundamental a change in the law of accord and satisfaction had been intended it seems likely that it would have been articulated—particularly during the critical years in the mid-fifties, when the fate of the Code probably hung in precarious balance." Rosenthal, *supra,* 61.

The UCC has been adopted in almost every state since 1968, and yet only four cases have addressed the applicability of § 1-207 to the full-payment check. In view of this limited precedent and the lack of agreement among legal scholars, we withhold adopting a particular judicial interpretation of § 1-207 at this time. Accordingly, the instant case is decided on the common-law principles enunciated in part I of this opinion.

The Court of Appeals decision is reversed. Costs to plaintiff-appellant.

KAVANAGH, C.J., and WILLIAMS, LEVIN, COLEMAN, FITZGERALD, and RYAN, JJ., concurred with BLAIR MOODY, JR., J.

---

[2] Section 3-802(3) read:

"Where a check or similar payment instrument provides that it is in full satisfaction of an obligation the payee discharges the underlying obligation by obtaining payment of the instrument unless he establishes that the original obligor has taken unconscionable advantage in the circumstances."