**McKEE CONSTRUCTION COMPANY and the City of Joplin, Missouri, ex rel. and to the use and benefit of McKee Construction Company, Plaintiff–Appellant,**

v.

**STANLEY PLUMBING & HEATING COMPANY, a Missouri corporation, Defendant–Respondent.**

No. 17630.

Missouri Court of Appeals,
Southern District,
Division Two.

April 7, 1992.

Rehearing Denied April 29, 1992.

John R. Sims, Greg R. Bridges, Ruyle and Sims, Neosho, for plaintiff-appellant.

Walter E. Williams, Joplin, for defendant-respondent.

MAUS, Judge.

McKee Construction Company, (McKee) filed this action against Stanley Plumbing

& Heating Company, (Stanley) seeking the balance of payment for excavation work done by McKee for Stanley. Stanley filed a motion for summary judgment alleging there had been an accord and satisfaction. That motion for summary judgment was granted. McKee appeals. The following is a brief summary of the facts necessary for the disposition of this appeal.

McKee entered into a contract with Stanley to do excavation work at the Shoal Creek Wastewater Treatment Facilities which was being constructed by the City of Joplin. As McKee worked on the project, disputes arose between McKee and Stanley as to whether McKee's work was being done properly. After McKee ceased work, a dispute arose as to whether the work was actually finished. Because of these disputes, there was disagreement over the amount McKee was to be paid for the work.

Stanley's attorney sent a letter with an enclosed check for $19,570.75 to McKee's attorney. The check was made payable to the attorney and McKee. The letter of enclosure stated, in part, the following.

"I am enclosing herein Stanley Plumbing & Heating's check in the amount of $19,-570.75 payable to Mr. McKee and to you. This check is tendered in full payment of all claims by Mr. McKee for work done on the Shoal Creek Wastewater Treatment Plant. Acceptance and negotiation of this check will be considered a full and final release of any claims that he may have against Stanley Plumbing & Heating. If Mr. McKee does not agree that this is a full and final settlement, please return the enclosed check to me."

The attorney endorsed the check and gave it to McKee. McKee then sought the advice of two other attorneys. The last attorney he consulted added the following restrictive endorsement to the back of the check:

"Under protest and with full reservation of rights to collect the balance owing."

The check was then endorsed by McKee and cashed. After cashing the check, McKee brought suit to recover the balance of the contract price allegedly due him.

Stanley filed a motion for summary judgment alleging the acceptance of the check for $19,570.75 constituted an accord and satisfaction. The trial court granted the motion for summary judgment. McKee appeals.

McKee's first point is:

"The trial court erred in granting summary judgment to respondent based on the determination that an accord and satisfaction took place when appellant cashed a payment-in-full check, because an accord and satisfaction did not occur as a matter of law in that appellant had placed a restrictive endorsement on the check pursuant to RSMO. 400.1–207, thus reserving its right to collect the balance it claims is due and owing."

The law on accord and satisfaction has been succinctly stated.

"An accord and satisfaction is a contract for the settlement of a disputed or unliquidated claim for an amount less than that claimed by the creditor. Such contract has been held to have been made in a myriad of cases, where a check has been tendered in payment of an account on express condition that acceptance thereof shall be deemed to be satisfaction in full. There have been repeated rulings that if the creditor cashes the check under such circumstances, an accord and satisfaction results notwithstanding protests on his part. Even his striking out or modification of the condition written on the check has been held to be ineffective. (Citation omitted)." *Henderson v. Eagle Express Company*, 483 S.W.2d 767, 768 (Mo.App.1972).

McKee contends Uniform Commercial Code § 400.1–207 RSMo 1986 has abrogated this common law rule. Section 400.1–207 provides:

"A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice', 'under protest' or the like are sufficient." § 400.1–207.

McKee cites *Majestic Building Material v. Gateway Plumbing*, 694 S.W.2d 762 (Mo. App.1985), which contains the following statement:

> "The language of this section will accommodate both performance and payment as a right within the underlying contract. For example, the right to cancel is not lost by the acceptance of performance when the aggrieved party has made a reservation of rights, *Cities Service Helex, Inc. v. United States*, 543 F.2d 1306, 1316, 211 Ct.Cl. 222 (1976); or, the fact that a seller continues to deliver goods on demand is not a waiver of seller's contention that the buyer is not entitled to the quantity of goods demanded when the seller makes delivery under a reservation of rights. *Shea–Kaiser–Lockheed–Healy v. Department of Water & Power*, 73 Cal.App.3d 679, 690, 140 Cal. Rptr. 884, 890 (1977). There is no logical reason that payment as a term of the underlying contract should be excluded from § 400.1–207. That section refers to a reservation of rights and Majestic as a seller had a right to payment and to assent to Gateway's performance of its obligation of payment." *Id.* at 765.

*Majestic* relies upon cases from other jurisdictions adopting that view such as *Scholl v. Tallman*, 247 N.W.2d 490 (S.D.1976), *Baillie Lumber Co. v. Kincaide Carolina Corp.*, 4 N.C.App. 342, 167 S.E.2d 85 (1969),[1] *Lange–Finn Construction Co. v. Albany Steel & Iron Supply Co.*, 94 Misc.2d 15, 403 N.Y.S.2d 1012 (1978).[2]

However, that view is not followed by the vast majority of jurisdictions. See *County Fire Door Corp. v. C.F. Wooding Co.*, 202 Conn. 277, 520 A.2d 1028 (1987); *Air Van Lines, Inc. v. Buster*, 673 P.2d 774 (Alaska 1983), 42 A.L.R.4th 1 (1985); *Pillow v. Thermogas Co. of Walnut Ridge*, 6 Ark.App. 402, 644 S.W.2d 292 (1982); *Connecticut Printers, Inc. v. Gus Kroesen, Inc.*, 134 Cal.App.3d 54, 184 Cal.Rptr. 436 (1982); *R.A. Reither Construction, Inc. v. Wheatland Rural Electric Association*, 680 P.2d 1342 (Colo.App.1984); *Eder v. Yvette B. Gervey Interiors, Inc.*, 407 So.2d 312 (Fla.App.1981), 37 A.L.R.4th 353 (1985); *Stultz Elec. Works v. Marine Hydraulic Engineering Co.*, 484 A.2d 1008 (Me.1984); *Cass Constr. Co., Inc. v. Brennan*, 222 Neb. 69, 382 N.W.2d 313 (1986); *Chancellor Inc. v. Hamilton Appliance Co.*, 175 N.J.Super. 345, 418 A.2d 1326 (1980); *Les Schwab Tire Centers v. Ivory Ranch, Inc.*, 63 Or.App. 364, 664 P.2d 419 (1983); *Marton Remodeling v. Jensen*, 706 P.2d 607 (Utah 1985); *State Department of Fisheries v. J–Z Sales Corp.*, 25 Wash. App. 671, 610 P.2d 390 (1980); *Van Sistine v. Tollard*, 95 Wis.2d 678, 291 N.W.2d 636 (1980); *Jahn v. Burns*, 593 P.2d 828 (Wyo. 1979); *Flambeau Products Corporation v. Honeywell Information Systems, Inc.*, 116 Wis.2d 95, 341 N.W.2d 655 (1984); *Anderson v. Rosebrook*, 737 P.2d 417 (Colo.1987); *Sharpe v. Nationwide Mut. Fire Ins. Co.*, 62 N.C.App. 564, 302 S.E.2d 893 (1983). The issue is the subject of an annotation. Annot., *Application of UCC § 1–207 to Avoid Discharge of Disputed*

---

**1.** In a subsequent case, the Court of Appeals of North Carolina held as follows:

> "Based on the plain words of the statute, we hold that G.S. 25-1-207 does not apply to a check tendered in full payment of a disputed claim. We believe the Official Comment and the history of the Uniform Commercial Code support this holding. When the defendant tendered a check to plaintiff in full payment of the claim, the plaintiff, by depositing the check, accepted the defendant's offer of settlement. This made it an accord and satisfaction.
> There is some language in *Baillie Lumber Co. v. Kincaide Carolina Corp., supra,* which would support a different result. That case involved a fully liquidated claim. It is not precedent for this case." *Brown v. Coastal*

*Truckways, Inc.,* 44 N.C.App. 454, 261 S.E.2d 266, 269 (1980).

**2.** "Although New York courts are in accord that, as a general matter, where the underlying transaction is covered by the Uniform Commercial Code § 1–207 of the Code permits a creditor accepting payment of a check tendered as payment in full to avoid discharge of the underlying obligation by making an explicit reservation of rights (see §§ 3[a], 4[a], supra), they are in disagreement as to the effect of that provision, if any, where the underlying transaction is not one covered by the Uniform Commercial Code." Annot., *Application of UCC § 1–207 to Avoid Discharge of Disputed Claim Upon Qualified Acceptance of Check Tendered as Payment in Full,* 37 A.L.R.4th 358, 372 (1985).

*Claim Upon Qualified Acceptance of Check Tendered as Payment in Full,* 37 A.L.R.4th 358 (1985).

Cases which held that the Uniform Commercial Code (U.C.C.) § 1–207 abrogates the common law doctrine of accord and satisfaction initially stemmed from the adoption of the following construction given U.C.C. § 1–207:

> "In summary the tender of a check in full satisfaction of a disputed amount will still constitute an offer of an accord and satisfaction. If the payee indorses without 'protest' or similar reservation, he will be bound by the accord and satisfaction, (at least if there was a *bona fide* dispute and the drawer is offering some concession). We believe that the enactment of 1–207 has substantially changed the outcome when the payee adds words of 'protest' to his indorsement. [Footnote omitted.] Certainly the post-Code case law indicates that 1–207 authorizes the payee who signs under protest to accept the amount of the check without entering an accord and satisfaction or otherwise forsaking his claim to any additional sum allegedly due him." White & Summers, Handbook of the Law Under the Uniform Commercial Code, § 13–21 (1972).[3]

See *Scholl v. Tallman,* supra.

■ It must be noted that *Scholl* also relied upon the following observation.

> "Likewise, the Commission on Uniform State Laws supports the position that § 1–207 was meant to apply to the conditional check.
>
> > 'The Code rule would permit, in Code-covered transactions, the acceptance of a part ... payment tendered in full settlement without requiring the acceptor to gamble with his legal right to demand the balance of the ... payment.' 1961 Report of the Commission on Uniform State Laws, 19–20." *Scholl v. Tallman,* 247 N.W.2d at 492. (Omissions in original.)

That 1961 report was also cited as authority by the text cited above. That 1961 report is not a report of the National Conference. of Commissioners on Uniform State laws who participated in drafting the Code. Nor was it a Comment accompanying the code when adopted in this state. Such comments are given great weight in construing a code. *Boatmen's Nat. Bank v. Eidson,* 796 S.W.2d 920 (Mo.App.1990). The significance of the 1961 report has been explained.

> "The 1961 Report of the New York Commission on Uniform State Laws, in its section-by-section annotations reflecting the relationships between the UCC and then existing New York law, viewed sec. 1–207 as changing the common law rules governing payments tendered in full settlement. The New York report stated as follows:
>
> > '[Section 1–207] permits a party involved in a Code-covered transaction to accept whatever he can get by way of payment, performance, etc. without losing his rights ... to sue for the balance of the payment, so long as he explicitly reserves his rights.... The Code rule would permit ... the acceptance of a part performance or payment tendered in full settlement without requiring the acceptor to gamble with his legal right to demand the balance of the performance or payment.'
>
> The New York report is of some significance since New York took a lead in studying the UCC and suggesting revisions during the drafting of the Code, and the report was highly influential in bringing about the adoption of the UCC in that key state. Rosenthal, *supra,* 78 Colum.L.Rev. 48, 58, 61, 62. Not surprisingly New York courts have concluded that sec. 1–207 does apply to full payment checks. [footnote omitted] The New York report has no binding effect, however, on our interpretation of the UCC as passed by the Wisconsin legislature, and there is no evidence that this state intended to follow the New York

**3.** That text has been revised. White & Summers, Uniform Commercial Code, § 13–24 (3d ed.1988).

interpretation or was aware of it. [footnote omitted]." *Flambeau Products v. Honeywell Info. Systems*, 341 N.W.2d at 662.

In considering but rejecting the quoted White & Summers' construction of U.C.C. § 1–207, the Supreme Court of Michigan made the following observation.

"Notwithstanding the UCC hornbook and the limited judicial authority [footnote omitted] supporting this interpretation, academicians disagree as to whether § 1–207 applies to a full-payment check. A recent, scholarly law review article illustrates the deluge of problems that would be created by adopting this application of § 1–207. See Rosenthal, *Discord and Dissatisfaction: Section 1–207 of the Uniform Commercial Code*, 78 Columbia L.Rev. 48 (1978).

The article sets forth reasons for refusing to apply the language of UCC § 1–207 to the full-payment check. It suggests such an interpretation of § 1–207 would make informal settlements of disputes considerably more difficult and would have the potential to substantially increase litigation. Accordingly, commercial transactions between businessmen, dealing at arm's length, would lack finality.

Furthermore, the legislative history of the UCC is not supportive of such interpretation according to the article, since the presence of both § 1–207 and § 3–802(3) [footnote omitted] in the 1952 Official Draft of the UCC, without any cross-referencing to each other, suggests that § 1–207 was not conceived as affecting the efficacy of the full-payment check:

'[I]f so fundamental a change in the law of accord and satisfaction had been intended it seems likely that it would have been articulated—particularly during the critical years in the mid-fifties, when the fate of the Code probably hung in precarious balance.' Rosenthal, *supra*, 61." *Fritz v. Mar-*

*antette*, 404 Mich. 329, 273 N.W.2d 425, 428–429 (1978).

When the language of U.C.C. § 1–207 is analyzed and considered in context that section should not be construed to abrogate the doctrine of accord and satisfaction.[4] Such construction ignores the significance of the use of the term "performance" and the absence of the term "payment" in that section. The U.C.C. recognizes a distinction between those terms. For example, the section following § 1–207 provides: "A term providing that one party or his successor in interest may accelerate *payment or performance....*" § 1–208. (Emphasis added.) An appropriate definition of "performance" is: "The fulfillment or accomplishment of a promise, *contract,* or other obligation according to its terms." (Emphasis added.) Black's Law Dictionary (4th ed. Rev.). Contracts which are the subject of the Code are contracts for the sale of goods. The significance of the word "performance" is emphasized by the fact that within Article 2, dealing with "Sales", Part 5 is entitled "Performance". The section heading of § 400.2–503 is "Manner of seller's tender of delivery." The limited applicability of the section by the use of the term "performance" is further emphasized by the Comment to U.C.C. § 1–207.

"1. This section provides machinery for the continuation of *performance along the lines contemplated* by the contract despite a pending dispute, by adopting the mercantile device of going ahead with delivery, acceptance, or payment 'without prejudice,' 'under protest,' 'under reserve,' 'with reservation of all our rights,' and the like...." (Emphasis added.)

See *Flambeau Products v. Honeywell Info. Systems*, supra; *Les Schwab Tire Centers v. Ivory Ranch*, supra.

Perhaps decisive of the issue, the U.C.C. continues to recognize the efficacy of pay-

---

**4.** "In the Restatement of Contracts 2d § 281, which generally discusses the doctrine of accord and satisfaction, comment d states that UCC § 1–207 'need not be read' as altering the general common-law rule that a creditor may not avoid discharge of the underlying obligation by accepting a full payment check with reservation of rights." Annot., *UCC § 1–207— Check as Payment-in-Full,* 37 A.L.R.4th at 362.

ment as a means of reaching an accord and satisfaction.

"(1) The negotiability of an instrument is not affected by

\* \* \* \* \* \*

(f) a term in a draft providing that the payee by indorsing or cashing it acknowledges full satisfaction of an obligation of the drawer; or

\* \* \*". § 400.3–112.

 A fundamental reason such construction would be erroneous is that the U.C.C. should not be construed to impair the freedom of contract. See White & Summers, Handbook of the Law Under the Uniform Commercial Code, § 2 (1972). An accord and satisfaction is a contract resulting from an offer and an acceptance. The construction referred to ignores the words "assents to *performance in a manner ... offered* by the other party." § 400.1–207. Even if that section were applicable to payment, it would not bar an accord and satisfaction. The manner in which payment was offered by Stanley was payment conditioned upon McKee's assent to that payment being in full satisfaction of Stanley's obligation. McKee could not assent to that manner of payment and yet reject the condition by unilaterally adding a reservation.

"The interests of fairness dictate that a creditor who cashes a check offered in full payment should be bound by the terms of the offer. The debtor's intent is known, and allowing the creditor to keep the money disregarding the debtor's conditions seems unfair and violative of the obligation of good faith which the UCC makes applicable to every contract or duty." *Flambeau Products v. Honeywell Info. Systems,* 341 N.W.2d at 663.

McKee's assent to the clearly ·expressed condition resulted in a new contract of accord and satisfaction.

Appellate courts of other states have considered the foregoing and other factors in reaching the conclusion that U.C.C. § 1–207 does not abrogate the doctrine of accord and satisfaction. Other factors which have been found persuasive include the following:

"Elsewhere in the Uniform Commercial Code, RCW 62A.1–103 and Official Comment 1 thereto require that the principles of law and equity are not to be displaced by particular provisions of the Code unless done so explicitly by the Code. RCW 62A.1–207 applies to performance of an agreement or assent to performance in a manner offered by the other party, while explicitly reserving rights. It is completely inconsonant with accord and satisfaction, which contemplates that one party's assent to performance by the second party in a manner other than that spelled out in the contract will create a new contract, rather than permitting the first to accept part performance and still invoke remedies to enforce the original contract. The statute does not explicitly supersede the law pertaining to accord and satisfaction, and it should not be inferred as doing so. *Gallagher Lumber Co. v. Shapiro,* 137 Vt. 139, 400 A.2d 984 (1979)." *State Dept. of Fisheries v. J–Z Sales Corp.,* 610 P.2d at 395–96.

"The common law rule of accord and satisfaction promotes fairness by protecting the bona fide expectations of a debtor who tenders payment on condition that it will be accepted as payment in full. The rule also provides a method of settling disputes without litigation." *Flambeau Products v. Honeywell Info. Systems,* 341 N.W.2d at 658–59.

"We believe that Section 1–207 was designed to serve a purpose unrelated to accord and satisfaction. Its purpose was to protect against waiver and estoppel." *Les Schwab Tire Centers v. Ivory Ranch,* 664 P.2d at 423.

A facet of legislative history which has been found relevant is discussed in *Flambeau Products v. Honeywell Info. Systems,* supra.

The conclusion that U.C.C. § 1–207 does not abrogate the doctrine of accord and satisfaction has been expressed in the following terms.

"The UCC has been adopted in almost every state since 1968, and yet only four cases have addressed the applicability of

§ 1–207 to the full-payment check. In view of this limited precedent and the lack of agreement among legal scholars, we withhold adopting a particular judicial interpretation of § 1–207 at this time. Accordingly, the instant case is decided on the common-law principles enunciated in part I of this opinion." *Fritz v. Marantette*, 273 N.W.2d at 429.

"It is our opinion that the statute in question may not be employed to defeat a compromise and settlement or accord and satisfaction where the requisite elements for either of those devices are present or where a check is tendered in final payment for goods or services and is appropriately endorsed by the drawer in clear and unequivocal language which check is then accepted and cashed by the payee." *Eder v. Yvette B. Gervey Interiors, Inc.*, 407 So.2d at 314.

"Applying sec. 1.207 to the full payment check would not necessarily serve to 'simplify,' or 'clarify,' or 'modernize the law governing commercial transactions.' Nor would an application of sec. 401.207 promote the purpose and policy of the UCC of permitting 'the continued expansion of commercial practice through ... agreement of the parties.' All that would be accomplished would be the elimination of the simple technique of the full payment check; sophisticated parties might still arrange their affairs to achieve the benefits of the full payment check. See Rosenthal, *Discord and Dissatisfaction: Section 1–207 of the Uniform Commercial Code*, 78 Colum.L.Rev. 48, 71–74 (1978)." *Flambeau Products v. Honeywell Info. Systems*, 341 N.W.2d at 663. (Omission in original).

The previously quoted statement from *Majestic* is dictum. In that case, it was stipulated that the underlying debt was liquidated. The doctrine of accord and satisfaction was not applicable. This court holds that § 400.1–207 does not abrogate the doctrine of accord and satisfaction. McKee's first point has no merit.

■ McKee's second point is:

"The trial court erred in granting summary judgment for the respondent since a factual issue remained to be decided by the jury in that appellant maintained that it did not intend its cashing of a check tendered in full and final settlement of all claims to foreclose its right to recover additional monies that it claimed were due, as evidenced by a restrictive endorsement on the check, thus creating a factual dispute over whether or not a 'meeting of the minds' occurred."

Stanley clearly intended that acceptance of the check by McKee was a "full and final release of any claims that [McKee] may have against Stanley Plumbing & Heating." But, McKee argues he never intended his acceptance to be full and final settlement of the claim. He expressed that intent by his restrictive endorsement. Therefore, he concludes, an element essential to the formation of a contract, a "meeting of minds", is absent.

However, it has been held:

"[T]he meeting of the minds essential to a contract may not be found on the undisclosed assumption or secret surmise of either party but must be gathered from the intention of the parties as expressed or manifested by their words or acts. (Citations omitted)." *Macy v. Day*, 346 S.W.2d 555, 558 (Mo.App.1961).

See also *Computer Network v. Purcell Tire & Rubber*, 747 S.W.2d 669 (Mo.App. 1988). Stanley offered the check in full and final payment of any claim that McKee may have against Stanley. This was expressly stated in the letter of enclosure. That condition was emphasized by the statement in the letter: "If Mr. McKee does not agree that this is a full and final settlement, please return the enclosed check to me." McKee cashed the check. By this act, McKee accepted Stanley's condition that the proceeds of the check constituted a full and final settlement. McKee cannot make it otherwise by forming a contrary subjective intent and, as he contends is authorized by § 400.1–207, "crossing his fingers", and adding a restrictive endorsement and cashing the check.

McKee's second point is denied and the judgment is affirmed.

FLANIGAN, C.J., and SHRUM, P.J., concur.